Final cases, United States v. Steele, and Mr. Sheldon, whenever you're ready. Good morning. John Sheldon for Mr. Steele. I'd like to first give the Court a brief overview of some facts that I think are important, and then I'm going to discuss what I think are the salient points of each of the claims in Mr. Steele's brief. Robert Steele was a vice president of business development, and he was an administrator of the IT system at Platinum, a government contractor. Eventually, as often happens in this field, Mr. Steele left Platinum for Buchanan, and the parting was not very amicable. There was a lot of negotiation. If a person, while employed at Platinum, has authority to access the IT systems and then terminates their employment, goes to work for a competitor, and in the process says, I tell you that I will not attempt, after having left, to access the computer system, then why isn't that enough to allow the former employer to conclude that whatever authority had existed before that date was terminated? Since the employment is now terminated, it's not while you're an employee, and it's not the act of using it inconsistent with whatever authority you had, the spontaneous that the Hex case said that we would not accept, but why isn't the departure when the employee says, I'm not going to have any more to do with that, rest assured, and then goes off someplace else, why isn't that enough to terminate whatever authority was there? Well, that's a good question, Judge Green. I think that's the nub of the first claim. The nub of the first claim is, does a employer need to do anything to rescind the authorization? So, absolutely, he had authorization. Absolutely, he left. He continued to access. And the question is, obviously, the cases do not address this particular point, because all the cases, the cases, the employment cases, so there's two groups of cases. There's the hacking cases, where the statute applies much more easily, and the employment cases, where people are in the leaving stage, and they're partly leaving and accessing. In this case, he left, absolutely said, I'm not going to use my R steel, but he had two accounts. But even while he was employed there, his authorization to review other people's emails was limited, even while he was employed there, correct? He couldn't do so without specific authorization from the president or CEO. Yes, Your Honor, but this is, when you're talking about access to the computer, but then exceeding his access, that's something he was not charged with. So every time the government talks to you in their brief about, he had access to the computer, but he didn't have access to emails, that's exceeding his authorized access, and the indictment never charged him with that. So let me get quickly to the two definitions. Without authorization is when you gain admission to the computer without approval. But exceeds authorized access is when a defendant has approval to access a computer, but uses his access to obtain information that falls outside the bounds of his approved access. So every time the government says there was a company policy that he couldn't look at emails, and he looked at emails, the government is presenting evidence on an element that was not charged, that is, exceeds authorized access. So I think it's very relevant that he left. It is an unanswered question whether Platinum or any business needs to do something to rescind authorization. In this case, Platinum did nothing to rescind authorization. They did many things to rescind his other authorizations to access a building, to access our Steele email account, but there were two accounts, our Steele and another account, Exchange Recovery. And Platinum did nothing to rescind his authorization. Our second claim, which is what I think Judge Thacker's question goes to more importantly, is the constructive amendment of the indictment. I think it is relevant, let me back up for a second to claim one. It's relevant between claim one and claim two that when the judge was trying to determine whether the rescission of access was necessary or not in the Rule 29 motion, the judge really got it wrong. He never ruled on whether Steele leaving was enough rescission of authorization to access a computer. Instead, the government argued in the Rule 29 motion all about the company policy of the emails and the emails, and Judge Lee ruled in denying Steele's Rule 29 motion that Steele accessed a computer in excess of authorization. So the judge misunderstood because there was all this evidence presented about these emails. But these emails were virtually irrelevant to the one indicted offense without authorization. So we come to the jury instructions. The judge instructs the jury twice that they can find Steele guilty if he accesses a computer in excess of authorization. Don't we have to absolutely take into consideration that the indictment did not charge the unauthorized access beyond, use beyond authority, but was unauthorized. But as we counted up, there were 753 lines in the trial transcript of the instructions. The two errors are only four lines. The indictment itself was given to the jury to look at, and it's clearly only alleged the unauthorized access. The court instructed them that you can't find them guilty for anything that wasn't in the indictment. Cited the statute. The statute was done correctly. The special verdict sheet in each and every single reference in the special verdict sheet with all counts said unauthorized access. And they polled the jury at the end. And the jury acknowledged that that was their decision and it was unauthorized access. So it is true that there were those two instances in which the judge Lee did slip of the lip. But isn't it true that that we are allowed to look at the totality of the instructions and determine whether or not it alleged something that wasn't in the indictment as opposed to end in the inquiry finding two without seeing whether it affected the outcome of the jury in the totality. Yes, your honor. But I think there are two factors that you also should consider. You're absolutely right. The totality of the circumstances. The government cites the Boyd case, which is a U.S. Supreme Court case that looked at whether when when the court when the trial court instructed the jury that they could consider mitigating circumstances if it was extenuating to the offense. And the court looked at the language extenuating to the offense. And sort of it's really ambiguous language about is mitigating evidence extenuating to an offense. Did that the question for the court was, was that a constructive amendment? Did that prevent the jury from considering the defendants mitigating evidence? And the court said, you know, the other thing we really need to look at is what was presented at trial. We need to look at the evidence that was presented at trial in order to that's part of the totality, the evidence that was presented and what was argued. And the court found that there was two hours of mitigating evidence presented at trial. And so what would the jury given their instruction and given all this evidence that is also included in the totality have considered for this instruction? And the court said, well, the jury wouldn't have thought that they were just given this evidence for no reason whatsoever. We don't believe that with this ambiguous instruction and with the two hours of evidence that the jury would have thought that the extenuating, the instruction that the evidence must extenuate the crime would have eliminated all that evidence. Similarly, in this case, the government spent a lot of time talking about the company policy of he's not allowed, of Steele was not allowed to access e-mails. And spent a lot of time talking about the e-mails. So much so that when Judge Lee made his Rule 29 motion, he made it, he denied it on the wrong ground. He denied it on a ground that had broadened the indictment and that Steele was not charged with it. So Judge Lee made the mistake and he made the mistake because, excuse me. Judge Lee made the mistake because the government did spend a lot of time talking about the company policy on e-mails. And that Steele had looked at e-mails. But that is not relevant to without authorization. The company policy on e-mails and the looking at e-mails is only relevant to exceeds authorized access. Once you're in, are you doing something you're not allowed to do? If I'm an employer and I have an IT system that allows e-mails and I have other IT aspects as well that may allow me to do internet research or to use other digital media in connection with computer assisted drawings or coming up with bid proposals. If I say to an employee, you can access, we have five potential portals of information that you have access to, computerized information. And you have access to these two, but not to the remaining three. And that under those circumstances, if I don't go into one and two that I have authority to, but go into three or four under your, that's an exceeding the use, not unauthorized. Clearly I think, clearly under the cases. If you access information that you are allowed to access but misuse it, it's not a violation of this statute of law. But if I say you can't go to three and four, then you have no authority to go there to begin with. That's right. Can I say that as an employer? Yes, you can. And isn't the evidence, wasn't the evidence uncontroverted from the trial that the e-mail was off limits? He did not have authority to go into that. Yes, absolutely, Your Honor. But that is only about exceeds authorized access. Once you have access to a computer and you're allowed to access one and two, but not three, four, and five. If you access three, four, and five, that is not accessing a computer without authorization. That is accessing, that is exceeding your authorized access. And Steele was not charged with that. That's the point here. And I think because this, the government's burden is to show beyond a reasonable doubt this didn't affect the verdict. I'm sorry, it's a per se reversal. And because of all the evidence on the e-mails, I think the government really confused the jury. And obviously confused the judge who made the ruling that I believe the jury made, which is that in this case. Could you, before, before your time is up, could you just discuss your double jeopardy argument? Because the government may have an issue there that I want you to lay out your argument. Right. So the two arguments for the unconstitutional theory of conviction are that Grand Larseny was one, double jeopardy. And two, under Virginia law, Grand Larseny, you cannot be convicted of Grand Larseny of intangible items. And so that was one of their three elevating theories that raised this crime from a misdemeanor to a felony. In this case, Insioni said if the third factor is another act, another crime. If that crime is the same conduct as the unauthorized access of a computer to obtain files, then there's double jeopardy. In addition. Well, you don't need to actually obtain or download the files to violate this act. It's simply the access that is a violation. Right? No, Your Honor. I think the statute says to access a computer without authorization and obtain files. And obtain files? Yes. All right. That's what the statute says. And so that's why the conduct is exactly the same. And more importantly, the Grand Larseny in Virginia can't be of intangible items. Can I ask a question on that? Because your brief was very artful in addressing that. The indictment alleged all three potential statutory enhancements, right? It alleged the commercial advantage and private financial gain, and in furtherance of a criminal or tortious act in violation of the Constitution and Grand Larseny. Assume for a moment we agree with you that the Grand Larseny aspect is indistinguishable from the misdemeanor conduct and therefore you have a Fifth Amendment issue. And there was no evidence that he destroyed, altered, or manipulated any of the evidence. He just accessed it. But why isn't it that the jury wasn't able to find that the first trigger, the commercial advantage or private financial gain, in that there was abundant evidence, was there not, that he, even though he denied that that was what he wanted to do, that he accessed information like spreadsheets and cost and pricing information, which is what he then took to his new employer, and they came out with a bid that was a mere $100,000 on a multimillion dollar contract, below what his former company did. And why isn't it that that aspect, since that was an alternative ground, and there was no evidence that there was any tortious destruction or act in violation, why isn't that an alternative ground that was the only available ground under which the jury could have found? That's a good question, Your Honor. First, the burden is on the government to show beyond a reasonable doubt that this ground of Grand Larseny did not affect the verdict. And I don't think it did because every time the government argued the three elevating theories, they argued all three of them, they argued the Grand Larseny. Second, the jury was instructed to address each count separately. And third, the jury asked a specific question, not about the other two elevating factors, but about this elevating factor. And I know I was unable to find case law in this court, but I know in the Supreme Court in Virginia law, when a jury asks a question about an instruction that's incorrect, it's very important to the court. It shows that you don't know what the jury's thinking, but you do know they're considering it. And the jury asked a question about the Grand Larseny charge. Moreover, more than two-thirds of the closing argument of Steele's counsel was devoted to value. Because Adam Rossi, the president of Platinum, was the only person to discuss value, and there was a lot of animosity between them. In fact, on cross-examination, Rossi was thoroughly impeached on a number of different factors. In the closing argument, the Steele's counsel argued very persuasively, I think, that there are many ways in which this information could be seen to have no value. Importantly, the FBI's own witness, Ms. Closure, testified that despite this similarity in pricing structures, that she could determine that there was no use of this information in Buchanan's bid. And that's because even though the bids had a only $100,000 difference, they weren't apples to apples. They weren't providing the same items, the same services for that contract. And so the testimony was that they really didn't use this information. I see my time is up if there are no more questions. All right, we've got some time left for rebuttal. Mr. Nguyen? May it please the Court, my name is Alex Nguyen for the United States, and I would like to address the three arguments that Mr. Sheldon raised. First, the defendant's sufficiency of the evidence claim is basically that a rational jury couldn't have possibly found that his 79,000 accesses, secret and systemic review of confidential emails to bid against his former employer were somehow without authorization. That argument failed for multiple reasons. First, he was never authorized, even as an employee, to access any employee information. Upon resigning, the defendant renounced and repudiated his access. He turned back his badge and laptop, and those not just by actions but also by words, by saying, I commit to you that I will not access those systems after I leave. The company itself revoked the access in every way possible, electronically, by shutting down access, physically, by taking back key cards, contractually, by having contracts that say you can't access these systems, and financially, they stopped paying him. So not only that, but the defendant's lawyer conceded and urged the jury to find misdemeanor violations of the Computer Crime Act, which, of course, as you know, includes the unauthorized access element. And so using the ordinary contemporary common meaning, because without authorization is not defined in a statute, a jury could rationally conclude that these accesses were without authorization. The defendant himself admitted this on the stand. When asked were these accesses without authorization, he said, it was wrong, and I know I shouldn't have done it. Turning to the second argument on the jury instructions, as has been pointed out, the two stray and accidental references to access without authorization and in excess of authorization were not a fatal constructive amendment to indictment. The jury instructions were 31 pages long, and at that time, that was the only charge that the judge instructed on, and they were phrased exclusively in terms of without authorization. The jury was told, as has been pointed out, that the defendant's not on trial for any conduct not in the indictment, and the indictment was given to the jury, and the evidence overwhelmingly focused on the without authorization problem. So it's like the Velez case by the circuit, which was unpublished, but the defendant did not object there. Jury instructions were fully consistent, and the jury was given a copy of the indictment. The cases in which the Fourth Circuit has found a constructive amendment go really to the heart. The question there is, given the evidence and the jury instructions, was the defendant convicted of a distinct, unindicted offense? And that's clearly not the case. In Floresca, for example, the defendant was charged with one subsection of his statute and then instructed on a totally different subsection of the statute involving a different specific intent. In the Whitfield case, which the defendant cited, the result of the constructive amendment ended up enhancing the sentence significantly. And in the Randall case, which the defendant cited, involved a different actus reus, a different predicate offense to begin with. So there's no prejudice, in other words, that could be shown at all. Turning to the third argument, the state statute, there's an argument that somehow there is a double jeopardy concern here, and that's simply not true, as the 1030 statute only requires access without authorization, and thereby obtaining information. The grand larceny statute requires an actual taking of that information. I think the issue from the Sioni case is whether the same conduct was used to convict the defendant of the misdemeanor convictions that was also used to enhance those same convictions to felony convictions. How is the conduct different? And how do we know, based on this verdict form that doesn't really differentiate anything? Yes, Your Honor. In the Sioni case, the government charged a 1030 violation, which basically says that whoever intentionally accesses a computer or exceeds unauthorized access and thereby obtains information is guilty of a crime. The enhancing statute, which is 18 U.S.C. Section 2701, is strikingly similar. It says, whoever intentionally accesses without authorization a facility through which electronic communication services are provided or intentionally exceeds that authorization and thereby obtains email, essentially, is guilty of a crime. So the Fourth Circuit there said, well, you can't charge that you accessed a computer in furtherance of that very same access of the computer. That's not what the case is here. Here, we're charging you're accessing a computer in order, and that's a 1030, in order to take information as trial evidence here, not just the defendant read emails and contacts, but that he actually took the information, downloaded it, and saved it onto different hard drives. So the conduct, Your Honor, of the computer crime statute, which is accessing, and then the grand larceny statute, which is then taking that information and saving it onto your computers, is different. So the concerns that the Fourth Circuit saw in Sioni are not here. How is it different? It's different, Your Honor, because in the two statutes, the 1030 statute and the 2701 statute, go to the same thing. They both prohibit unauthorized or exceeding authorized access and thereby obtaining information. The 1030 statute is about obtaining information from a protected computer. The 2701 statute is about obtaining wire and electronic communications. So you can't essentially access a computer in furtherance of that very same access. What we have charged here is access in furtherance of a taking. Could I ask a question about that taking, though? Yes. Because, at least unless I misread it, the Silvestri v. Commonwealth case, a 1990 case, the Virginia Appellate Court ruled, didn't they, that the intellectual property that is the taking, the thing that was taken here is electronic or intangible property. Didn't they rule that intangible digital information could not be the subject of an exportation, a taking? And if that's the case, then how doesn't that undermine whether the underlying state felony could be proved if the highest court of the land interpreting essentially wrote out or invalidated the statutory provision that the legislature tried to do to make the taking of digital information a larceny offense? Your Honor, the case that we have cited here is the Evans v. Commonwealth case, which came in 1977. There was a case, the Lund case, which basically ruled that a defendant who took computer time and it was a grand larceny statute couldn't be convicted of that. The next year, 1978, the Virginia legislature enacted a law, which is still on books today, which basically says under Section 18.2-152.8, says that for purposes of Section 18.2-95, which is what we charge here, personal property subject to embezzlement, larceny, or receiving stolen goods shall include computer data regardless of whether they are tangible or intangible, Your Honor. So in other words, there's both in the statute as well as case law support the notion that intangible properties such as computer data can be the subject of larceny. I don't know that you answered the question. How do you square Silvestri with that statute? I'm not, Your Honor. I think that what that points to, Your Honor, is that at least based on the Virginia statute and the Supreme Court law on Evans and Silvestri, is that the law isn't 100 percent settled on this. So the argument that the defendant did not base this below, and so there is not a plain error. But even were the court to hold that Silvestri governs the Virginia statute and the code of the Virginia state and the Evans case that we cited, which is also a Virginia Supreme Court case, is trumped by the Silvestri case and it's settled law, it's still true that the overwhelming bulk of the evidence in this case, Your Honor, is focused on the other two prongs. Could you talk about that, please? Yes, Your Honor. Even if the court here were to find that the state statute is somehow invalid and that the settled law actually goes the other way, the trial overwhelmingly focused on the two other ways in which a violation was a felony on the competitive advantage. And so most of the evidence focused on the competitive nature of the business. Witnesses from the victim company as well as the competitor talked about how it was very competitive. The evidence focused on the timing of the defendant's accesses. But we don't know what the jury focused on to enhance the misdemeanors to felonies because the verdict forms don't give them the option. It's not a special enough verdict form to indicate that. Yes, Your Honor, except for count 11, which is on... So the fact that it's there in count 11 just highlights it even more than it's not there in the other counts. So we don't know that this was harmless or not. Your Honor, in count 11, the verdict slip says that we find the defendant guilty of felony offense and lists only the one enhancing prong, which is the competitive advantage prong. That's page 885. And there the jury found that it was essentially still a felony conduct. But if you look at the other counts also, Your Honor, in count 7, 8, 11, 12, and 13, based on the summary chart, which is on page 1069 of the appendix, there is no evidence that files have actually been taken or downloaded. And the fact that the jury there still voted to convict on felony we submit is essentially evidence that they had convicted on the other prongs because the state law prong would require an actual taking and therefore the presence of that file on the various, on the defendant's hard drive. On count 7, 8, 11, 12, and 13, based on the summary chart submitted to the jury, which is page 1069, there was no evidence that a file had been taken and so was not in support of the grand larceny prong. So based on both count 11 as well as count 7, 8, 10, 11, 12, and 13, we would submit, Your Honor, that the error was harmless here, especially with respect to count 11, which is where the jury voted on just the competitive advantage prong to make it a felony. You said the error was harmless. I thought you were arguing plain error. Was this issue raised at trial? No, Your Honor. It was not. Okay. So what's the standard? The standard here is harmless error, Your Honor. If there are two alternative ways of, two alternative legal theories to come to the same conclusion and one of them is invalid, the court would apply a harmless error analysis, Your Honor. Okay. Anything further? I'm sorry. Go ahead. Yeah. So you referenced the chart, I think, with regard to count 7, 8, 11, 12, and 13. Do you have any response with regard to, I think that leaves us with counts 10, 14, and 15, where we don't know what the jury may have used to enhance to a felony? Your Honor, it would be our argument that those counts would be valid as well under harmless error analysis just because the overwhelming bulk of the evidence in this case, the witnesses called, the testimony elicited, the exhibits put into the record, overwhelmingly went to the competitive nature of the conduct here. So essentially, Your Honor, it was evidence that would not matter or would not be relevant to the state prong statute because, for example, we focused on the e-mail boxes, the defendant accessed e-mail boxes of the movers and shakers in the company. The timing of his accesses were around the same time that bids were being submitted. He logged in during the board test. And I'm sorry to interrupt you, but I didn't write down the JA site for the chart that you mentioned. 1069, Your Honor. And if you would look at the site at 1069, there are various columns, but the last column is the one that's relevant because that last column says where on the defendant's computers these files were found. Certain counts had evidence that the file accessed was actually taken and put onto the hard drive. So that's true for various counts. Other counts leave that box blank, meaning that we were not able to find evidence that the defendant had actually taken that file in accordance with the grand larceny statute if that's where the court comes out. And therefore there could not be a larceny because there was no taking? Correct, Your Honor. So the fact that the jury convicted on all those counts essentially suggests that it didn't matter for the jury whether or not a file had actually been taken and downloaded or not. So the only reasonable conclusion then would be that they convicted on the competitive advantage prong. So essentially that would be our argument as to harmlessness. This is a summary chart. Was it admitted into evidence? Yes, Your Honor. Yes, Your Honor. So again, on those counts where we were actually able to recover a file to show the taking and on counts where we were not able to show that the file had actually been taken and downloaded, the jury considered that and they basically said we're going to convict on those felonies also. So that the court can conclude that it didn't matter for the jury whether or not a file was actually taken, which is what the grand larceny statute is about. And that's consistent with the overwhelming bulk of the evidence. The entire focus, if you look at the closing argument, for example, the overwhelming bulk, it's something like 15 pages of argument, the overwhelming bulk of the government's closing and the evidence focused on the first two prongs, the $5,000 prong and the competitive advantage. And then the state law theory essentially took up a paragraph of the closing argument. And so, Your Honor, under those circumstances, it's simply the court can conclude that the error, to an extent there is any, is entirely harmless. Unless the court has any other questions. Thank you very much, Mr. Nguyen. Thank you. Mr. Sheldon. Thank you. Briefly, I think that chart, it just says blanks. It doesn't say that it wasn't found and the government never conceded that he didn't obtain those files. The government argued he obtained files. There's a chart that simply has blanks. And the government asking you to sort of speculate as to what the jury did with what is admittedly easy for me to say because I didn't do the trial. Very confusing evidence and very confusing instructions. Evidence admitted that was not relevant to without authorization. Lots of evidence in excess of authorization. The government, I would dispute, focused on the first two factors. Every time the government talked about the three elevating factors, competitive advantage, $5,000 or grand larceny, methodically went through all three. Every time he said, every time the government in their closing talked about them, he went through all three. The jury asked about only one of those. The jury asked about grand larceny. I want to very quickly address something that may appear in an opinion you write about the $79,000, what the government in their brief says logins, accesses, and intrusions. Not so, not at all. If that were true, then from the moment he left, he would have had to access, log in, every three minutes for every waking hour until he was caught. Obviously, it's not true. What happened was a government witness testified to this document, Exhibit 36-1 at JA 949, and it had the number 79,000. He said, what is it? He says, oh, when you get into the computer, there are logs, and the logs keep track of activity. And from then on, the government conflated the word logs, which is simply a document that tracks activity, for the word log in. They're not similar at all. Every time Mr. Steele logged in, there were many, many items added to those logs for every single time, and it doesn't mean perhaps not very relevant for the main issues. But I just want to be clear, nobody logged into computers 79,000 times. It was a few hundred times, and the government's evidence shows that. I think I want to leave by just emphasizing that on the constructive amendment, the idea that there was only two mentions of in excess of authorization. The jury was taking notes, and they were listening very carefully, and they were considering everything they were told, just like the judge did. And the judge, in his Rule 29 motion, made the mistake of finding that Mr. Steele accessed a computer in excess of his authorization, something he wasn't charged with. If the judge can do that, based on the evidence that the government presented, which I think really confused the jury and the judge many times, the evidence being there's a company policy not to access e-mails, so even if he did get in, he shouldn't have been accessing these e-mails. That's not relevant to what he was charged with without authorization. If the court could be confused on this element, the jury certainly could be confused, especially when being instructed. If the court has no other questions, I ask you to reverse Mr. Steele's convictions. Thank you. Thank you. Thank you, Mr. Sheldon. All right. The court will come down and greet counsel, and we will stand adjourned. I ask the clerk to adjourn court.
judges: Albert Diaz, Stephanie D. Thacker, Paul W. Grimm